J-S62044-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| S.K.W. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| J.C.S. | |
| Appellant | No. 945 WDA 2015 |

Appeal from the Order Entered May 14, 2015
In the Court of Common Pleas of Crawford County
Civil Division at No(s): F.D. No. 2014-50

BEFORE: GANTMAN, P.J., JENKINS, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:                 **FILED OCTOBER 21, 2015**

Appellant, J.C.S., appeals from the order entered in the Crawford County Court of Common Pleas, which granted primary physical custody of the parties' minor child, G.O.S. ("Child"), to Appellant, subject to periods of partial custody by Appellee, S.K.W. We affirm.

The relevant facts and procedural history of this appeal are as follows. The parties began a same-sex relationship in 2007 or 2008. Appellee moved into Appellant's home around one year later. Appellant is the biological mother of Child, who was born in 2010, and Child's younger twin siblings. Appellee became an adoptive parent of Child in July 2011. The parties subsequently had relationship difficulties, and Appellee moved out of Appellant's home in August 2013. Following the separation, Appellee initially

_____

*Retired Senior Judge assigned to the Superior Court.

had informal visits with Child on Monday evenings and one day each weekend.

Appellee filed a custody complaint on February 18, 2014, seeking shared legal and physical custody of Child and Child's siblings. On September 23, 2014, Appellee amended the complaint to request shared custody of Child only. Following a mediation conference, the court entered an initial custody order on December 5, 2014, which, *inter alia*, granted Appellant primary physical custody of Child. Appellee was granted partial physical custody of Child, which entitled Appellee to visit Child each week on Monday from 4:00 p.m. to 7:00 p.m. and on either Saturday or Sunday from 10:00 a.m. to 6:00 p.m.

On December 15, 2014, Appellee filed a motion for a *de novo* hearing. Following that hearing, the court entered a custody order on May 14, 2015, which again granted Appellant primary custody of Child, subject to periods of partial custody by Appellee. Specifically, the new order granted Appellee custody of Child on the first, third, and fourth weekend of every month, as well as from 4:00 p.m. to 7:00 p.m. on each weekday (Monday through Thursday) that Appellant is working.[1] On June 11, 2015, Appellant filed a timely notice of appeal and concise statement of errors complained of on appeal per Pa.R.A.P. 1925(a)(2)(i).

---

[1] Appellant is a firefighter who works a twenty-four hour shift and is off for forty-eight hours before beginning a new shift.

Appellant raises the following issues for review:

WHETHER THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN FAILING TO CONSIDER APPELLANT'S EMPLOYMENT SCHEDULE IN FASHIONING A CUSTODY ORDER WHICH NOW RESULTS IN…CHILD BEING WITH HER SIBLINGS AND…APPELLANT ONLY TWO, NONCONSECUTIVE, WEEKEND DAYS EACH MONTH.

WHETHER THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN ITS APPLICATION OF THE CUSTODY FACTORS TO THE FACTS AND CIRCUMSTANCES OF THIS CASE, AS FOLLOWS:

A. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED IN DETERMINING THAT [APPELLEE] WAS MORE LIKELY TO ENCOURAGE AND PERMIT FREQUENT AND CONTINUING CONTACT BETWEEN…CHILD AND APPELLANT.

B. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED IN DETERMINING THAT…CONSIDERATION OF THE FACTORS OF WHICH [OF] THE PARTIES PERFORMED PARENTAL DUTIES ON BEHALF OF…CHILD ONLY "SLIGHTLY" FAVORED…APPELLANT.

C. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED IN NOT APPROPRIATELY CONSIDERING THE NEED FOR STABILITY AND CONTINUITY IN…CHILD'S EDUCATION, FAMILY LIFE AND COMMUNITY LIFE.

D. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED IN DETERMINING THAT THE CONSIDERATION OF…CHILD'S SIBLING RELATIONSHIPS ONLY "SLIGHTLY" FAVORED…APPELLANT.

E. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED IN DETERMINING THAT THE CONSIDERATION OF WHICH PARTY IS MORE LIKELY TO PROVIDE A MORE LOVING, STABLE, CONSISTENT AND

NURTURING RELATIONSHIP WITH…CHILD DID NOT FAVOR EITHER PARTY.

F.     WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED IN DETERMINING THAT THE CONSIDERATION OF WHICH PARTY IS MORE LIKELY TO ATTEND TO THE DAILY PHYSICAL, EMOTIONAL, DEVELOPMENTAL, EDUCATIONAL AND SPECIAL NEEDS OF…CHILD DID NOT [FAVOR] EITHER PARTY. [A]PPELLEE ADMITTED THAT SHE DID NOT PROVIDE ANY SUPPLIES SUCH AS DIAPERS FOR [CHILD] AND DID NOTHING TO SUPPORT [CHILD] AFTER THE PARTIES SEPARATED.  IN FACT…APPELLEE FAILED TO PROVIDE ANY SUPPORT UNTIL…APPELLANT FILED A CHILD SUPPORT ACTION AGAINST HER.

G.     WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED IN DETERMINING THAT THE CONSIDERATION OF THE ABILITY OF THE PARTIES TO COOPERATE WITH ONE ANOTHER SLIGHTLY FAVORED…APPELLEE.

WHETHER THE [TRIAL] COURT'S INFERENCES AND DEDUCTIONS WERE UNSUPPORTED BY EVIDENCE OF RECORD AND WERE USED IN A PUNITIVE MANNER IN AWARDING APPELLEE SIGNIFICANTLY MORE CUSTODIAL TIME WITHOUT CONSIDERATION OF THE STATUTORY FACTORS AND WHICH RESULTED IN MEANINGFUL TIME WITH APPELLANT AND CHILD'S SIBLINGS BEING SIGNIFICANTLY DECREASED.

(Appellant's Brief at 3-4).

In reviewing a child custody order:

[O]ur scope is of the broadest type and our standard is abuse of discretion.  This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations.  In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand.  However, we are not bound by the trial court's deductions or inferences

- 4 -

from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*S.J.S. v. M.J.S.*, 76 A.3d 541, 547-48 (Pa.Super. 2013) (internal citation omitted). Additionally,

[O]ur Legislature adopted a new Child Custody Act ("Act"), effective on January 24, 2011. *See* 23 Pa.C.S.A. §§ 5321–5340. The new Act applies to "disputes relating to child custody matters" filed after the effective date of the new law. 23 Pa.C.S.A. § 5321. In *E.D. v. M.P.,* 33 A.3d 73, 76 (Pa.Super. 2011), we held that the Act applied to any proceeding, including a petition for relocation, initiated by a **filing** made after the effective date of the Act.

*Id.* With respect to a custody order, Section 5328(a) provides:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

- 5 -

(3)    The parental duties performed by each party on behalf of the child.

(4)    The need for stability and continuity in the child's education, family life and community life.

(5)    The availability of extended family.

(6)    The child's sibling relationships.

(7)    The well-reasoned preference of the child, based on the child's maturity and judgment.

(8)    The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9)    Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10)  Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11)  The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16)  Any other relevant factor.

23 Pa.C.S.A. § 5328(a). In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M. v. M.L.G.**, 63 A.3d 331, 336 (Pa.Super. 2013), *appeal denied*, 620 Pa. 710, 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant custody factors, complies with Section 5323(d). **Id.** In a child custody proceeding:

> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.
>
> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

**R.M.G., Jr. v. F.M.G.**, 986 A.2d 1234, 1237 (Pa.Super. 2009) (internal citations omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Anthony J. Vardaro, we conclude Appellant's issues merit no relief. The trial court comprehensively discusses and properly disposes of the questions presented. (**See** Trial Court Opinion, filed June 25, 2015, incorporating its

- 7 -

Memorandum, filed May 14, 2015, at 2-7) (examining each relevant factor under applicable statute; concluding shared custody arrangement as ordered is in Child's best interest).   Accordingly, we affirm on the basis of the trial court's opinion, incorporating its May 14, 2015 memorandum.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/21/2015

## IN THE COURT OF COMMON PLEAS OF CRAWFORD COUNTY, PENNSYLVANIA

### Civil Action - Law

S. K. W. ,
**Plaintiff**

Vs.

J. C. S. ,
**Defendant**

:
:
:
:
:        **No. F.D. 2014-50**
:
:
:

FILED
JUN 2015 25 AM 11: 10
PROTHONOTARY
CRAWFORD COUNTY, PA

<u>Barbara Mountjoy, Esq.,</u> for Plaintiff
<u>Debra S. Higgins, Esq.,</u> for Defendant

### OPINION SUR Pa. R.A.P. 1925(a)

**Anthony J. Vardaro, P.J.**                                    **June 25, 2015**

**AND NOW, June 25, 2015,** this Court writes this Opinion pursuant to Pa.R.A.P. 1925(a) in light of the Notice of Appeal filed by the Defendant from the Custody Order entered by this Court on May 13, 2015 following a custody hearing.

This Court believes that the Memorandum attached to that Custody Order authored by this Court on May 13, 2015 explains for the most part this Court's reasoning with regard to the various factors for which the Defendant has complained of on appeal.

The decision rendered by this Court was intended to be in the best interest of the child after hearing all of the evidence presented in the case.

To the extent the Defendant argues that this Court did not consider her employment schedule in fashioning the custody order, first of all it is difficult to do so because her schedule is twenty-four (24) hours on and forty-eight (48) hours off, which means that she may be available for the child on some weekends and on others she may not. The Order entered by this Court was intended to give the child some weekend time with the Plaintiff since the defendant has primary physical custody throughout the week and was further intended to allow the Plaintiff to have some time with the child during the week but only for three hours in the evening and only on days when the Defendant is not able to spend time with the child because of her work schedule.

Another item raised in the Defendant's Statement of Matters Complained of on Appeal that this Court carefully considered is the history of drug or alcohol abuse. This Court was satisfied, taking into consideration testimony of witnesses including that of the Crawford County Human Services Coordinator for services for children that the Defendant does not drink alcoholic beverages when in custody of the child. This Court further addressed that concern to the extent it was applicable to either party in paragraph no. 6 of the Order directing that neither party shall use illegal drugs or alcohol at any time that party has care and custody of the child.

Finally, with regard to Item No. 3 raised in the Matters of Statement Complained of on Appeal, nothing was done by this Court in a putative matter. The determinations made were in the best interest of the child based on the evidence and this Court specifically notes that the Defendant continues to have substantially more physical custody of the child than the Plaintiff. However, as the record in this matter this Court believes will disclose, the Defendant would prefer that the Plaintiff have only minimal physical custodial time with the child which this Court does not find to be in the best interest of the child.

**BY THE COURT,**

**P.J.**

6/25/15 faxed Hoggins
Mountjoy

2

# IN THE COURT OF COMMON PLEAS OF CRAWFORD COUNTY, PENNSYLVANIA

## Civil Action - Law

S. K. W. ,

**Plaintiff**

    Vs.

J. C. S. , :

**Defendant**

**F.D. 2014-50 V**

*Barbara J. Mountjoy, Esq.*, **for Plaintiff**
*Debra S. Higgins, Esq.*, **for Defendant**

## MEMORANDUM AND ORDER

**Anthony J. Vardaro, P.J.**                      **May 13, 2015**

These parties are the parents of one minor child, G. O. S. , who was born on September , 2010 and is therefore four years of age.

The Plaintiff filed a custody complaint on February 18, 2014 which actually included this child as well as twins, J. E. S. and L. B. L. S. , who were born on July , 2012. The Defendant is the natural mother of all three children but the Plaintiff only adopted G. O. S. and therefore was proceeding with regard to the twins arguing that she was *in loco parentis* with regard to the twins.

Ultimately, the Plaintiff has not pursued custody of the twins and a mediation conference finally occurred on November 20, 2014 with regard to G. O. S. only resulting in an Order of December 4, 2014.

The Plaintiff requested a De Novo hearing which was initially scheduled but rescheduled because Defendant's attorney was ill.

We have now conducted that De Novo hearing.

The parties called several witnesses at the hearing but to summarize the facts, while the two parties were not in agreement in their testimony, it appears that they got together in 2007 or 2008 and by August of 2009 they had moved in together as partners.

After G.O.S. was born to the Defendant as her biological child while the parties were partners and Plaintiff was present in the delivery room, in 2011 the child was adopted by the Plaintiff.

The parties resided together until latter August of 2013 when the Defendant, apparently concerned about the Plaintiff drinking alcoholic beverages too much and not being part of the family with the Defendant and the three children, told the Plaintiff to get out of the residence which she did within a couple of days.

The parties had resided together                      in the City of Meadville which was a home that the Defendant owned for many years prior to the Plaintiff and Defendant getting together.

The Plaintiff then apparently moved to      Chestnut Street in Meadville where she currently resides.

The Plaintiff has worked at Walmart as a receiving associate for almost seventeen years and her typical schedule is from 5:00 a.m. to 2:00 p.m. Monday through Friday and sometimes she works on Saturday which may extend to 2:00 p.m. or may end earlier. She gets four weeks of vacation each year.

The Plaintiff was formerly married and has two adult children, a son twenty-two years old who is about ready to graduate from college and a daughter nineteen years old who is in the Navy.

The Plaintiff indicates that those children do interact positively with G.O.S. when they are in the area.

Other than those children the Plaintiff's other family is located in the Philadelphia area and she indicated that they had only had contact with G.O.S. on three occasions, once when they came here and twice when the child was taken to the Philadelphia area.

Sometime after the parties separated they attempted to reach an interim custody agreement and while ultimately the Plaintiff did not sign that, apparently her custody has been limited to Monday evenings from 4:00 p.m. to 7:00 p.m. and either Saturday or Sunday from 10:00 p.m. to 6:00 p.m.

The Plaintiff indicated the Defendant is a firefighter for the City of Meadville and works a twenty-four hour shift, is then off for forty-eight hours and begins another twenty-four hour shift. She does sometimes work an extra twenty-four hour shift as overtime.

The Plaintiff testified that when the parties were together whichever one of them was home would provide childcare or if both were home both would provide childcare. When neither was able to be home they had various babysitters, including at least two who wanted the child brought to them to stay overnight because of the work hours the parties had.

2

The Plaintiff testified that she spent time with the child playing inside and outside and going for walks. She also indicated that she did most of the cooking and cleaning while the parties were together.

The Plaintiff further stated that the Defendant usually took the child to the doctor because the Plaintiff was working during those hours.

She testified the normal routine for the child was to give her dinner and then prior to getting her to bed by 8:00 p.m. she would have some playtime and perhaps tell her stories.

She testified that normally the Defendant would take the child to the Defendant's mother's residence in Fairview on Sundays and that at first she went but then quit going because that was her only day to do chores around the house.

The Plaintiff testified that before the parties began following the schedule they have been following, the first three weeks that they separated she would be able to call and see the child frequently but only for an hour or an hour and a half at a time and was never allowed to take the child out of the home of the Defendant.

She further testified she exercised every possible period of visitation with the child she could except on one occasion when she was sick and another when she was out of town but the visits were strained and particularly because at least on one occasion the Defendant's mother was nasty to her and often it was the Defendant's mother that was there for the visits.

Ultimately, the Plaintiff was permitted to take the child from the Defendant's home and the exchanges have gone fairly well except there is often a delay when she picks up the child but she has never been allowed to have the child overnight.

The Plaintiff called various witnesses that indicated that she is a good mother and interacts with G.O.S. and G.O.S. seems to be happy with the Plaintiff.

The Defendant testified that her home has four bedrooms and two and a half baths with a kitchen, living room, dining room and is fenced in the back so that there is a place for the child to play.

She has a Master's Degree in counseling and a Bachelor's Degree in psychology.

It was very clear that she is concerned that the Plaintiff drinks alcoholic beverages to excess when she is with the child because she felt the Plaintiff did so when they were together, but frankly there was limited evidence to substantiate that.

It appears that she does well taking care of G.O.S. and the other two children and another issue she raises is that she hates to separate G.O.S. from the other two children to go to spend time with the Plaintiff.

3

Additionally, the Defendant indicated that she felt G̶,d̶,S̶. was too young to have overnights with the Plaintiff.

She indicates that she takes care of the children when she is not working and that her mother has a room in her residence and comes down from Fairview to take care of the children when she is not available because of work.

She indicated that she does various activities with the children, including outings to Erie to various free activities.

She testified that essentially she is now scheduling all the medical appointments and was making decisions such as which preschool the child should attend until the time the mediation occurred and the Order was entered. She indicates she now follows the Order.

The child, when in her custody, does have contact with various members of her family and apparently goes on vacation with members of the Defendant's family in the summer for typically one week and this year apparently for two weeks.

The Defendant had witnesses also testify that her relationship with the child is good and that they do activities together of various kinds.

There have been some problems with the child not wanting to go to the Plaintiff for periods of temporary physical custody according to the Defendant and she indicated that while initially she tried to encourage the child to do so, ultimately she was telling the child that the child needed to talk to the Plaintiff to work those issues out.

Interestingly, the Defendant indicated that the child calls her mom or mommy and calls the Plaintiff either S. or another name that apparently includes S. in it.

The one thing that is abundantly clear in this case, is that the Defendant has taken total control of this child and has dictated what contact the Plaintiff will have with the child and what information will be given to the Plaintiff.

Even more alarming is that the Defendant's mother who spends a lot of time with the child really testified in a way that would suggest that she could well harm the relationship the child has with the Plaintiff. She has obviously not accepted the nature of the relationship of the Plaintiff and Defendant when they were together and the fact the Plaintiff has adopted the child to the extent she testified the child cannot have two mothers and that she considers the Plaintiff to be the child's stepmother.

Based on these facts and more facts we may discuss in considering the seventeen factors we must consider pursuant to 23 Pa.C.S.A.§5328(a), we will now determine what is in the best interest of the child.

4

The first factor we must consider is which party is more likely to encourage and permit frequent and continuing contact between the child and another party. That factor very clearly favors the Plaintiff. We frankly believe that she is entitled to more custodial time with the child than she is even seeking and we have every reason to believe that she will cooperate with the Defendant. On the other hand, based on the fact the Defendant, and perhaps her family, really think that since she is the biological mother of this child she controls things since she has been very restrictive since she has in fact controlled the relationship between the child and the Plaintiff, we would not expect her to be particularly cooperative. There have been some times when the parties have apparently discussed custody changes which were made to benefit the Plaintiff, but that was only because the Defendant was working and it is very clear that she wants the child to spend the least amount of time with the Plaintiff as possible.

The next factor we consider is the present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child. That does not appear to be a factor in this case.

Factor 2.1 regards the consideration of whether there has been any child abuse and involvement with protective services and both parties indicated there has not and we have no evidence to indicate otherwise.

We next consider factor three which is the parental duties performed by each party on behalf of the child. It appears that both parties performed parental duties when they were together but obviously, since the Plaintiff has been pretty much excluded from much contact with this child, the Defendant probably has performed more parental duties and that factor slightly favors the Defendant.

We next consider the need for stability and continuity in the child's education, family life and community life. Clearly, the child has that within the home of the Defendant because it has been established for her. The problem we see is there has been reference to the child's family being that which she has with the Defendant and that's not proper. The child has family but the child has two parents who both are entitled to custodial rights. Certainly the child can continue to have stability in the Defendant's household but that doesn't mean she can't also as part of that stability have a consistent and growing relationship with the Plaintiff.

To the extent the Defendant indicates that when they were initially together the Plaintiff didn't want any more children because she had raised two children, obviously she does very much want to spend time with this child and she must be permitted to do so.

5

Next we consider the availability of extended family and it is clear that while the Plaintiff has some extended family who interacts with the child, this factor favors the Defendant.

The sixth factor we consider is the child's sibling relationships. That factor slightly favors the Defendant because the child has a relationship with her younger twin siblings. However, the child does have a relationship with her adult half-brother and half-sister when they are in the area and can spend time with the child.

Next we consider the well-reason preference of the child based on the child's maturity and judgment and obviously that is not a factor because of the child's age. To the extent the Defendant has tried to make that a factor by putting this four year old child in a position where she is supposed to talk to the Plaintiff about whether she wants to visit with the Plaintiff or not, the Defendant should cease putting the child in that position. It appears that in any event, the child does quite well when she is in the Plaintiff's care regardless of what may occur in the house of the Defendant before the child leaves to go with the Plaintiff. Also, we note in passing that we do not conclude that the Plaintiff is not properly feeding the child even though the Defendant and her mother insinuate that the Plaintiff has not properly fed the child since the child wants to eat when offered the opportunity at the Defendant's home upon returning from the Plaintiff's custody.

The eighth factor we consider is the attempts of a parent to turn the child against the other parent except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm. In that regard there is no direct evidence that has occurred but again, we suggest that the Defendant putting the child in a position that the child is supposed to talk to the Plaintiff if she does not want to go to the Plaintiff's house and the fact that the Defendant appears to be all right with the child calling the Plaintiff "Sue" borders on concerns about the Defendant trying to turn the child against the Plaintiff.

However, at this time we do not believe that factor favors either party.

The ninth factor we consider is which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs and while again we are concerned about the control the Defendant wants in this case, we do not believe that factor favors either party.

The next factor we consider is which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child and we feel that factor favors neither party.

6

The eleventh factor we consider is the proximity of the residences of the parties and they are within a few blocks from each other so that is not a factor.

The twelfth factor we consider is the availability to care for the child or make appropriate childcare arrangements. Both of these parties are able to do that either through their own care or through appropriate arrangements although again, while we will not find this factor favors either party, we are concerned about the Defendant's mother's substantial contact with this child based on her attitude and thoughts.

The thirteenth factor we consider is the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party. We believe this factor slightly favors the Plaintiff since it is clear the Defendant is only going to do, for the most part, what she thinks she has to do under a court order and clearly only wants to have minimal contact with the Plaintiff even with regard to the child.

The next factor we consider the history of drug or alcohol abuse of a party or member of a party's household. There is evidence that both parties drank intoxicating beverages when they were together and the Plaintiff apparently still drinks intoxicating beverages. There is no indication, despite the innuendo, that either party put the child at any risk because of drinking alcoholic beverages. There is some evidence presented by the Defendant that the Plaintiff would not care for the child at a point she had too much to drink but we are satisfied that may well have been because of the dynamics of their relationship between the parties when they were together and we have no reason to believe that the Plaintiff will not put the child ahead of drinking alcoholic beverages. We find that factor favors neither party.

The next factor we consider is the mental and physical conditions of a party or member of a party's household. We will not find that factor favors either party although again, we are very concerned about the contact of the Defendant's mother with child when she is residing in the home of the Defendant caring for the child while the Defendant works.

The final factor we consider is any other relevant factor and we do not find there is any.

Based on our consideration of the various factors and the fact the Plaintiff is only asking for limited contact with the child, we find it is in the best interest of the child for the Defendant to have primary physical custody with the Plaintiff to have substantially more physical custody than she has enjoyed since August of 2013.

ACCORDINGLY, we will enter the following Order:

7